JAMES SOARES AND PATRICIA SOARES, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 2722–67. Filed September 19, 1968.

*Vernon K. Deming* and *Lee M. Galloway*, for the petitioners. *Jeffry E. Boly*, for the respondent.

TIETJENS, *Judge:* The Commissioner determined deficiencies for the taxable years ending December 31, 1964, and December 31, 1965, in the following amounts:

| Year | Deficiency | Addition to tax, sec. 6653(a), I.R.C. 1954 |
| --- | --- | --- |
| 1964 | $13, 791. 18 | $689. 56 |
| 1965 | 385. 00 | |

The issues for our determination are: (1) Whether petitioners disposed of certain section 38 property during the taxable year 1964 so as to make the recapture provision of the investment credit under section 47(a) (1), I.R.C. 1954,[1] applicable, and (2) whether any part

---

[1] All statutory references are to the Internal Revenue Code of 1954 unless otherwise specified.

of petitioners' underpayment for the taxable year 1964 was due to negligence or intentional disregard of rules and regulations so as to make the 5-percent addition to tax under section 6653(a) applicable.

All the facts have been stipulated and are so found. The stipulation and exhibits attached thereto are incorporated herein by this reference.

James Soares and Patricia Soares were husband and wife during the taxable years in question and filed joint Federal income tax returns with the district director of internal revenue, San Francisco, Calif., for the taxable year 1964, and with the district director of internal revenue, Los Angeles, Calif., for the taxable year 1965. On the date the amended petition to the Tax Court was filed, James Soares and his wife resided in Sacramento, Calif.

Prior to January 1, 1964, James Soares, hereinafter referred to as petitioner or Soares, operated a cement-hauling business as a sole proprietorship. During the taxable year 1962, Soares obtained $67,935.43 of new and used assets. Pursuant to section 38 of the 1954 Code, petitioner claimed $4,755.48 as an investment credit on his 1962 income tax return. One of the assets, costing $1,000 in 1962 and on which investment credit of $95.30 was claimed in 1962, was sold in 1963. Hence, $95.30 of the investment credit claimed in 1962 was indicated as recaptured on petitioner's 1963 return. During the year 1963, petitioner, as a sole proprietor, acquired $46,318.06 of new and used assets. Pursuant to section 38 of the 1954 Code, petitioner claimed $1,888.38 as an investment credit on his 1963 income tax return. In addition, $1,353.88 of investment credit was to be carried over to the next year.

On January 1, 1964, Soares formed a partnership known as Sacramento Cement Transport, hereinafter referred to as the partnership or Sacramento, with Sierra Distributing, Ltd., an electing small business corporation (subchapter S), hereinafter referred to as Sierra. As part of the agreement by which the partnership was formed, Soares contributed all of the assets of his sole proprietorship in exchange for a 48-percent interest in this partnership. Sierra owned the remaining 52 percent.

On July 1, 1964, Soares exchanged his 48-percent interest in the partnership for 7.22 percent of the outstanding stock of Sierra. Thereafter, Sierra dissolved Sacramento and caused all of the partnership assets, part of which were section 38 property, to be transferred to Sierra.

The book value of Soares' 48-percent interest in the partnership was equal to the fair market value of his 7.22-percent interest in the outstanding stock of Sierra.

During the taxable years in question, the other 92.78-percent interest in the outstanding shares of Sierra was owned by a six-member family named Culy.

During the year 1964, before the partnership was dissolved, Sacramento acquired $57,619.33 of new and used assets. Pursuant to section 38 of the 1954 Code, $5,002.27 was claimed on petitioner's 1964 return, which included $1,353.88 of investment credit carried over from 1963, less $384.96 carried over to 1965.

The Commissioner determined a deficiency for the taxable year 1964. The total amount disputed by the petitioner includes the $5,002.27 described above and $6,548.56, the amount the Commissioner determined as recapturable prior investment credit.

In the explanation attached to the notice of deficiency, the Commissioner asserted the following:

#### COMPUTATION OF INVESTMENT CREDIT

*Year: 1964*

On January 1, 1964, you transferred the assets from your sole proprietorship to a new partnership, Sacramento Cement Transport, and in return you received a 48% interest in the partnership. The remaining 52% of the partnership interest was held by Sierra Distributing, Limited, a subchapter "S" corporation. The partnership was dissolved on June 30, 1964, at which time you transferred your 48% interest to Sierra Distributing, Limited, for a 7.22% in that corporation. It is held that you did not retain a substantial interest in the trade or business represented by your sole proprietorship and the successor partnership at the time the assets initially contributed by you to the partnership were transferred to the corporation. It is therefore considered that you disposed of the assets contributed to the partnership at the date of its dissolution. Accordingly, the investment credit claimed in 1962 and 1963 on the assets which you are considered to have disposed of in this manner must be recaptured, and the amount claimed for 1964 based on your share of credit for assets purchased by the partnership is not allowable. Since it is held that no investment credit is allowable to you for the year 1964, no credit is available for carryforward to the year 1965.

The computation of the amount of investment credit to [be] recaptured in the year 1964 is as follows:

| | |
|---|---:|
| 1962 investment credit | $4,755.48 |
| 1963 investment credit | 1,888.38 |
| Total | 6,643.86 |
| Less: 1962 purchase, sold in 1963; investment credit recaptured in 1963 | 95.30 |
| Investment credit to be recaptured, 1964 | 6,548.56 |

For the taxable year 1964, petitioner also failed to report $2,783 of business income from lease payments received from Sierra during the year 1964, and $2,299 of long-term capital gain received from the 1964 sale of a 1954 Peterbilt truck. During the same taxable year, petitioner

also realized $1,188.13 of ordinary income pursuant to section 1245 by selling a Peterbilt truck, upon which $1,188.13 in depreciation had been allowed since December 31, 1961.

During the year 1965, Soares claimed investment credit of $764. The amount of $379 constitutes his proportionate share of the section 38 assets acquired by Sierra in 1965 and is not in dispute. The remaining $385 (this figure was rounded from $384.96 on the return) of investment credit is a carryover from 1963 and 1964, based upon Soares' sole proprietor acquisitions in 1963 of section 38 property, and is in dispute.

Petitioner's 1964 and 1965 income tax returns were prepared by a certified public accountant.

The issues for our determination are: (1) Whether the recapture of the investment credit provisions of section 47(a)(1) are applicable to petitioner's disposition of certain section 38 property, and (2) whether petitioner is liable for the penalty under section 6653(a) because of negligence or an intentional disregard of rules and regulations.

With regard to the first issue, the Commissioner determined that when the petitioner exchanged his partnership interest for 7.22 percent of Sierra, an electing small business corporation, he disposed of his section 38 property and is liable for the recapture of the investment credit under section 47(a)(1).[2]

Section 47(b) provides for an exception to the investment credit recapture provisions under section 47(a)(1). It states in part:

For purposes of subsection (a), property shall not be treated as ceasing to be section 38 property with respect to the taxpayer by reason of a mere change in the form of conducting the trade or business so long as the property is retained in such trade or business as section 38 property and the taxpayer retains a substantial interest in such trade or business.

The Commissioner stated in the deficiency notice that petitioner did not fall under this exception, because petitioner did more than merely change his form of conducting the trade or business, and that petitioner failed to retain a substantial interest in the business after the exchange, thereby making the exception inapplicable. The petitioner

---

[2] SEC. 47. CERTAIN DISPOSITIONS, ETC., OF SECTION 38 PROPERTY.

(a) GENERAL RULE.—Under regulations prescribed by the Secretary or his delegate—

(1) EARLY DISPOSITION, ETC.—If during any taxable year any property is disposed of, or otherwise ceases to be section 38 property with respect to the taxpayer, before the close of the useful life which was taken into account in computing the credit under section 38, then the tax under this chapter for such taxable year shall be increased by an amount equal to the aggregate decrease in the credits allowed under section 38 for all prior taxable years which would have resulted solely from substituting, in determining qualified investment, for such useful life the period beginning with the time such property was placed in service by the taxpayer and ending with the time such property ceased to be section 38 property.

argues contrariwise, contending that his 7.22-percent interest in Sierra was a "substantial interest in the trade or business" and therefore we should find that the transaction only constituted a mere change in form that qualifies petitioner for the exception to the general rule of section 47(a)(1).

The regulations make it clear that the interest of the taxpayer will qualify as a substantial interest when either it is "substantial in relation to the total interest of all persons," or is equal to or greater than his interest prior to the change in form of conducting the trade or business. Sec. 1.47–3(f)(2),[3] Income Tax Regs.

To us, the phrase "substantial in relation to the *total interest of all persons*" means that after the petitioner transferred his trade or business to the corporation, he must own a significant portion of *all* of the outstanding stock in order to qualify under this regulation. (Emphasis supplied.) In the instant case, the stipulated facts show that petitioner, after acquiring the stock of the corporation, only held approximately 1 out of 14 shares of the outstanding stock. We believe this small fractional portion of the total shares fails to satisfy the test in the regulations.

As an alternative argument, the petitioner contends that his interest in Sierra was equal to his interest in the partnership and therefore, under section 1.47–3(f)(2)(ii), Income Tax Regs., petitioner should be considered to have retained a substantial interest in the trade or business. Petitioner raises this argument based on the assumption that it is the value of property transferred to the corporation compared to the value of the stock received that determines whether petitioner's interest is equal to that of his prior trade or business. He asserts that in this instance the values were equal and that the petitioner qualifies under section 1.47–3(f)(2)(ii), Income Tax Regs., as having maintained a substantial interest.

Petitioner is in error. The regulations make it clear that it is the percentage interest rather than value of the interest in the business that must remain unchanged. The logic of this is apparent. Had the provision been written in terms of value, then in almost every instance any transfer of a trade or business would qualify. In every bona fide,

---

[3] Sec. 1.47–3(f)(2). *Substantial interest.* For purposes of this paragraph, a transferor (or in a case where the transferor is a partnership, estate, trust, or electing small business corporation, the partner, beneficiary, or shareholder) shall be considered as having retained a substantial interest in the trade or business only if, after the change in form, his interest in such trade or business—

(i) Is substantial in relation to the total interest of all persons, or

(ii) Is equal to or greater than his interest prior to the change in form.

Thus, where a taxpayer owns a 5-percent interest in a partnership, and, after the incorporation of that partnership, the taxpayer retains at least a 5-percent interest in the corporation, the taxpayer will be considered as having retained a substantial interest in the trade or business as of the date of the change in form.

arm's-length transaction the stock received will equal the value of the trade or business transferred to the corporation. If not, the transferor would never have entered into such a bargain. This is clearly not the intention of this regulation. The proper standard can only be whether the percentage of ownership interest remained unchanged or increased, and if so the rule under this regulation may be invoked.

Under the present circumstances, petitioner's percent of ownership of the business decreased significantly, from 48 to 7.22 percent. Thus, we cannot find that petitioner retained a substantial interest under this second test. Accordingly, we hold that petitioner did not *merely* change the form of conducting his trade or business, and therefore his disposition of the section 38 property qualifies for the recapture of the investment credit under section 47(a)(1).

The only other issue herein raised is whether the petitioner is liable under section 6653(a)[4] for the 5-percent addition to tax which the Commissioner has determined. The burden of proving that the imposition of this addition to tax is erroneous rests upon petitioner. *David Courtney*, 28 T.C. 658, 669; *J. T. S. Brown's Sons Co.*, 10 T.C. 840, 851; *Gibbs & Hudson, Inc.*, 35 B.T.A. 205, 211. The only facts presented in this regard were that the petitioner's tax return for 1964 was prepared by a certified public accountant and that in 1964, petitioner's return did not include income in the following amounts from the following sources:

| | |
|---|---|
| Lease payments | $2,783.00 |
| Sec. 1231 gain from the sale of Peterbilt truck | 2,299.00 |
| Sec. 1245 gain from the sale of Peterbilt truck | 1,188.13 |

Petitioner's sole contention is that petitioner's reliance upon his accountant is a good defense to the penalty under section 6653(a). The same argument was presented in *American Properties, Inc.*, 28 T.C. 1100, affirmed per curiam 262 F. 2d 150 (C.A. 9, 1958), wherein we stated the following at pages 1116, 1117:

It is well established that the duty of filing accurate returns cannot be avoided by placing responsibility upon an agent. *Vern W. Bailey*, 21 T.C. 678; *Harold B. Franklin*, 34 B.T.A. 927; *Irving Fisher*, 30 B.T.A. 433. And we have held that taxpayers must bear the responsibility for the failure of their agents. *Hyman B. Stone*, 22 T.C. 893.

Therefore, we uphold the Commissioner's determination that the addition to tax as provided under section 6653(a) was applicable.

*Decision will be entered for the Commissioner.*

---

[4] SEC. 6653. FAILURE TO PAY TAX.

(a) NEGLIGENCE OR INTENTIONAL DISREGARD OF RULES AND REGULATIONS WITH RESPECT TO INCOME OR GIFT TAXES.—If any part of any underpayment (as defined in subsection (c)(1)) of any tax imposed by subtitle A or by chapter 12 of subtitle B (relating to income taxes and gift taxes) is due to negligence or intentional disregard of rules and regulations (but without intent to defraud), there shall be added to the tax an amount equal to 5 percent of the underpayment.