**In re Patricia KAISER, a/k/a Patricia Giard, Debtor.**

**Bankruptcy No. 94–43007–172.**

United States Bankruptcy Court,
E.D. Missouri,
Eastern Division.

April 28, 1995.

David A. Sosne, Trustee, St. Louis, MO.

Stuart J. Radloff, Clayton, MO, for Royal Banks.

Mark A. Bertsch, St. Louis, MO, for debtor.

Martin M. Shoemaker, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, DC.

## ORDER

JAMES J. BARTA, Bankruptcy Judge.

This matter concerns the objection by Patricia G. Kaiser ("Debtor") to the proof of claim filed on behalf of the United States Internal Revenue Service ("IRS"). The trial was conducted on March 13, 1995. The IRS had previously filed a timely response to the Debtor's objection. Following the trial, the matter was submitted to the Court on the record as a whole.

This is a core proceeding pursuant to Section 157(b)(2)(A) and (O) of Title 28 of the United States Code. The Court has jurisdiction over the parties and this matter pursuant to 28 U.S.C. Sections 151, 157 and 1334, and Rule 29 of the Local Rules of Missouri. These findings and conclusions are the final determinations of the Bankruptcy Court.

### Facts

At the time of the trial, the Debtor had been married to Thomas Kaiser for 27 years. Thomas Kaiser is not a debtor in this case. However, the last contact the Debtor had with her husband was on December 16, 1993, when, to the best of the Debtor's knowledge, he left St. Louis due to substantial debt and other problems associated with his business dealings. The Debtor had no active role in her husband's business activities. The extent of her financial responsibilities in the marriage was to maintain a checking account to pay monthly household bills. The sole funding for this account was provided by her husband. For tax preparation reasons, the Debtor provided her husband with cancelled checks written for charitable purposes. She continues to maintain a separate savings account containing approximately $35,000.00, none of which came from her husband.

The Debtor has not worked outside of the home since approximately nine months after she and Mr. Kaiser married in 1967. She never participated in the management or ownership of her husband's primary business concern, Kaiser Electric, Inc. ("Kaiser Electric"). When Mr. Kaiser left St. Louis in December 1993, the Debtor was not aware that Mr. Kaiser had sold his interest in Kaiser Electric. The Debtor did not receive any of the proceeds from this sale.

In the fall of 1993, just before leaving St. Louis, Mr. Kaiser filed a joint 1992 income tax return. The document bears the signature, "Patricia G. Kaiser" on the bottom of the second page of the return in the box requiring a spouse's signature. The IRS and the Debtor have agreed that the Debtor in this proceeding did not sign the return and that the signature on the return is a forgery. The Debtor did not know that Mr. Kaiser had filed the return with her forged signature. The Debtor testified that she learned of the forged signature only after she requested and received a copy of the 1992 return in late 1993 or early 1994. She stated further that she never authorized anyone to sign the return for her; she never adopted the signature on the return as her own; she did not intend to file a joint return for 1992; she had planned to file an individual return until she realized she was not required to do so; and, that she was never asked to sign the 1992 return filed by her husband.

During the marriage, the Debtor never questioned Mr. Kaiser concerning tax matters. From 1967 through 1991, the couple filed joint tax returns. The Debtor acknowledged that for the tax years before 1992, she had signed the couple's joint tax returns without reviewing any of the documentation. Occasionally, Mr. Kaiser would cover part of a return with his hand or a piece of paper while the Debtor signed the return. The Debtor acknowledged that she had never indicated to Mr. Kaiser that she did not intend to file a joint return for 1992. She testified that she would have signed the 1992 return had Mr. Kaiser presented it to her. The 1992 return reflected a tax liability in the amount of $166,554.00, significantly more than in any previous year. Mr. Kaiser also sought and obtained an extension to file the 1992 return. The Debtor did not know why Mr. Kaiser requested the extension, and she had no input into the request for an extension.

The Debtor initiated divorce proceedings in March of 1994. A decree of dissolution had not been entered as of the time of this trial.

### *Discussion*

■ The issue before the Court is whether the income tax return filed by Mr. Kaiser absent the valid signature of the Debtor, qualifies as a joint return. If so, the Debtor and Mr. Kaiser are jointly and severally liable for the tax due. 26 U.S.C. § 6013(d)(3) (1989 & Supp.1994); *see Stevens v. Commissioner of Internal Revenue,* 872 F.2d 1499, 1503 (11th Cir.1989). If the return is not a joint return, the Debtor is not responsible for any portion of the tax liability and the Debtor's objection to the IRS proof of claim will be sustained. For the reasons below, the Debtor's objection will be sustained and the proof of claim filed by the IRS will be disallowed.

■ To determine whether an income tax return qualifies as a joint return, the Court must make a factual determination as to whether the taxpayer or taxpayers intended to file a joint return. *See Shea v. Commissioner of Internal Revenue,* 780 F.2d 561 (6th Cir.1986); *Sharwell v. Commissioner of*

*Internal Revenue,* 419 F.2d 1057 (6th Cir. 1969). In the *Sharwell* case, the Court determined that the tax return was a joint return, even though the wife did not sign the document. The court concluded that the signature (or lack of a signature) is only one of several factors to be considered in deciding whether or not a tax return is a joint return. The factors that were most persuasive to the *Sharwell* court included the determination that the wife knew that the tax returns were being prepared and that she took an active role in helping prepare the documents. 419 F.2d at 1059.

In the *Shea* case, neither the wife nor the husband signed the return; the wife later contested whether the return was a joint one. 780 F.2d at 563. The court concluded that the determination of intent to file a joint return should focus not on the wife's intent to file "*any* joint return," but rather on her intent to "file and be bound by the particular return in question." *Id.* at 567. Therefore, in the *Shea* case, facts such as the wife's delegation of most of the tax return responsibility to her husband, her decision not to file a separate return, and her filing of a joint return for every married year until the one in question, while relevant, could not overcome the conclusion that the wife did not intend to file the particular return at issue. In so concluding, the court noted the following: the wife had been denied the opportunity to review the form before it was signed; in previous years she had been present when the forms were being prepared, but for the return in question she had not been present and was wholly uninformed; and, she had derived no independent income to require her to file a separate return. *Id.* at 567–68; *see also Helfrich v. Commissioner of Internal Revenue,* 25 T.C. 404, 1955 WL 504 (1955) (no intent of wife to file joint return when her signature on the return was forged, she did not authorize anyone to sign for her, she did not know the return had been filed, and she did not participate in preparation of the return).

In the case at bar, the Debtor did not review the return before it was filed. In fact, she did not know Mr. Kaiser had filed a return until well after he had done so. Dur-

ing the course of their marriage, Mr. Kaiser had always asked the Debtor to sign the joint return that he would subsequently file; however, Mr. Kaiser never asked the Debtor to sign the 1992 return and she never did so. Furthermore, the fact that the Debtor did not file a separate return does not mean that she tacitly consented to the filing of the joint return. *See Shea*, 780 F.2d at 567. The Debtor did not derive enough income to require her to file a separate return; therefore, her failure to file a return has no bearing on this case.

Further evidence that the Debtor had no intent to file the particular return in question appears from other facts in the record. In previous years, when the Debtor merely signed the documents presented to her, the amount of the tax liability had never been as large as it was for the 1992 tax year. No evidence exists to refute the Debtor's position that she knew nothing of the sale of stock that resulted in the large tax liability. Also, nothing in the record suggests that the Debtor benefitted from the proceeds of Mr. Kaiser's sale of his stock in Kaiser Electric. At a time when she was a party to a dissolution proceeding, it is highly unlikely that the Debtor would have signed the contested return subjecting herself to well over $150,000.00 in tax liability. The circumstances surrounding Mr. Kaiser's filing of the return compel the conclusion that the Debtor did not intend to file the 1992 tax return as a joint return with her husband.

Although a wife's deference to her husband in tax and financial matters, along with a couple's history of filing joint returns and the wife's assertion that she would have signed a contested joint return had it been presented to her, can indicate an intent to file a joint return, the particular facts in each case may indicate the absence of such intent. *See Teplitz v. Commissioner of Internal Revenue*, 37 T.C.M. (CCH) 229, 238, 1978 WL 2752 (1978); *Groves v. Commissioner of Internal Revenue*, 16 T.C.M. (CCH) 887, 890, 1957 WL 810 (1957). The facts and circumstances presented in this case have indicated that the Debtor did not intend to file the 1992 tax return that is the subject of this proceeding.

**IT IS ORDERED** that this matter is concluded; and that the Debtor's objection to Proof of Claim No. 6, filed on behalf of the United States Internal Revenue Service is **SUSTAINED;** and that said Proof of Claim is not allowed in this Chapter 7 Bankruptcy case as not being a debt of this Debtor.